George Hofmann (10005)
Matthew M. Boley (8536)
Steven C. Strong (6340)
**Parsons Kinghorn Harris**
A Professional Corporation
111 East Broadway, 11th Floor
Salt Lake City, Utah  84111
Telephone: (801) 363-4300
Facsimile: (801) 363-4378

Proposed Attorneys for Debtor-in-Possession
HRAF Holdings, LLC

## IN THE UNITED STATES BANKRUPTCY COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| In re<br><br>HRAF HOLDINGS, LLC, and<br>HARBOR REAL ASSET FUND, LP,<br><br>Debtors. | Bankruptcy No. 10-32433 (RKM)<br>Bankruptcy No. 10-32436 (RKM)<br><br>Jointly Administered under<br>Case No. 10-32433<br><br>Chapter 11<br><br>[Filed Electronically] |

## MOTION FOR ENTRY OF AN ORDER AUTHORIZING THE DEBTOR (I) TO SELL REAL PROPERTY (LOCATED AT 2888 BLUE SAGE TRAIL, PARK CITY, UTAH) FREE AND CLEAR OF LIENS AND INTERESTS PURSUANT TO 11 U.S.C. §§ 363(b) AND (f), (II) TO PAY REAL PROPERTY TAXES AT CLOSING, (III) TO PAY BROKER'S COMMISSIONS AND OTHER COSTS OF SALE AT CLOSING, AND (IV) TO THE EXTENT LIENS EXIST AGAINST THE PROPERTY OR ITS PROCEEDS, TO RECOVER FROM THE SALES PROCEEDS PURSUANT TO 11 U.S.C. § 506(c)

### MOTION

Pursuant to 11 U.S.C. §§ 363(b) and (f) and Federal Rules of Bankruptcy

Procedure 6004 and 9014, debtor and debtor-in-possession HRAF HOLDINGS, LLC

(the "**Debtor**"), through counsel, moves the Court for entry of an order in the above-

captioned chapter 11 case (the "**Case**") authorizing it to sell, free and clear of liens,

claims and interests that certain real property located at approximately 2888 Blue Sage Trail, Park City, Utah 84098 (the "**Property**").  The Debtor proposes to sell the Property to JE Investments and/or its assigns (collectively, "**Buyer**") for a gross purchase price of $220,000.00 (the "**Purchase Price**"), as more particularly described in that certain *Real Estate Purchase Contract*, a copy of which is attached as **Exhibit "A"** (the "**REPC**").

The Debtor also moves the Court to authorize the Debtor to pay at closing: (i) all ad valorem property taxes due in connection with the Property as of the time of closing, including a pro-rated amount of the estimated 2010 property taxes to be reflected as a credit against the Purchase Price; (ii) closing costs ordinarily and usually borne by a seller at closing, as more particularly described in the REPC; and (iii) broker's commissions in the aggregate amount of six percent (6%) of the Purchase Price, including (a) $6,600 to Summit Southebys International Realty (the "**Broker**"), as seller's broker, (b) $6,600 to Summit Southebys International Realty, as buyer's broker.

To the extent the Court determines that liens do or will exist against the Property or the cash proceeds from the sale of the Property, the Debtor further moves the Court, pursuant to 11 U.S.C. § 506(c), to permit the Debtor to recover from the proceeds of the sale an amount sufficient (a) to pay at closing all property taxes and broker's commissions, closing costs and costs of sale, and (b) to reimburse the estate for the post-petition expenses paid or incurred by the Debtor to maintain and insure the Property.

Finally, to the extent the Debtor and creditors whose claims are secured by the Property stipulate regarding the amount of such creditors' claim or lien, the Debtor asks the Court to authorize the Debtor to pay such creditors at closing, in amounts and priorities to be specifically ordered by the Court.

In further support of the foregoing motion (the "**Motion**"), the Debtor respectfully states as follows.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      JURISDICTION AND VENUE**

1.      The Court has jurisdiction to hear the Motion pursuant to 28 U.S.C. §§ 1334 and 157.

2.      The Motion represents a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (N) and (O).

3.      Venue of the Case and of the Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The legal predicates for the relief sought in the Motion are 11 U.S.C. §§ 330, 363(b), 363(f) and 506(c), and Federal Rules of Bankruptcy Procedure 2016, 6004 and 9014.

**II.      BACKGROUND**

5.      The Debtor commenced the Case on September 9, 2010 (the "**Petition Date**"), by filing a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code"**).

6.      Pursuant to sections 1107 and 1108 of the Bankruptcy Code, the Debtor is operating its business and managing its property as a debtor-in-possession.

7.      No examiner or trustee has been appointed in the Case.

8.      As reflected on Schedule A, on file and of record in this case, the Debtor owns many parcels of real property (collectively, the "**Estate's Properties**").

9.      The Debtor is informed and believes that there is substantial equity in the Estate's Properties that can be realized to provide payment to creditors in this Case and, after payment in full to Bank of America, N.A. (the "**bank**"),[1] payment to creditors in

---

[1]      The bank holds an "interest" in the Property and the other Estate's Properties pursuant to recorded negative pledge agreements.  The bank, however, does not hold a security interest or lien interest in the Property or the other Estate's Properties.  Nevertheless, the bank is a general unsecured creditor of the Debtor.  As such, the bank holds a right to payment that is senior in priority to the right of Harbor, the Debtor's sole member, to receive cash distributions from the Debtor.

the chapter 11 bankruptcy case of the Debtor's parent, Harbor Real Asset Fund, LP

("**Harbor**").  The Debtor intends to sell and/or lease some or all of the Estate's

Properties as part of its reorganizational efforts.

10.     The Debtor will file in the near future an application to employ the Broker

as an Estate professional pursuant to Bankruptcy Code § 327(a) (the "**Broker**

**Application**").  The Broker Application will also request authority (a) to pay an

aggregate commission of six percent (6%) to real estate brokers in connection with the

sale of the Estate's Properties, and (b) to split the commission with the buyer's brokers.

11.     Finally, the Broker Application will ask the Court to permit the Broker and

the other Real Estate Professionals (as defined in the Broker Application) to act in the

capacity of a limited agent and/or to represent a buyer or lessee in connection with the

sale or lease of any of the Estate's Properties.


**III.     FACTS RELEVANT TO THE MOTION**

12.     The Property is a vacant lot located in the Promontory real estate

development in the area of Park City, Utah.

13.     The Debtor obtained title to the Property through foreclosure, in

connection with the Debtor's efforts to collect upon a loan for which the Property was

pledged as collateral.

14.     To the best of the Debtor's information and belief, the following liens exist

against the Property, in the following order of priority:

      a.     a secured claim in the amount of approximately $30,299 in favor of

Summit County, for ad valorem property taxes through 2009;

      b.     pro-rated ad valorem property taxes due to Summit County in 2010

in an amount to be determined; and

c.    HOA fees owing to the Promontory Conservancy, in the approximate amount of $10,500.

15.    The Property has been marketed and listed for sale since May 26, 2010.

16.    The Debtor, with the assistance and input of the Broker and based upon an analysis of comparable sales, originally determined to list the Property for sale at a price of $275,000.

17.    On or about July 27, 2010, Buyer offered to purchase the Property for the Purchase Price and on the terms and conditions more specifically stated in the REPC.

18.    The Purchase Price is the highest and best price offered, to date, for the purchase of the Property.

19.    Based upon the advice and input of the Debtor's real estate professionals and the Debtor's own investigation and research, and in the exercise of the Debtor's business judgment, the Debtor has determined that the Purchase Price is a fair and reasonable price.

20.    Further, the Debtor has determined that selling the Property on the terms and conditions stated in the REPC is in the best interests of its chapter 11 bankruptcy estate.

21.    Based upon its business judgment, on or about August 30, 2010, the Debtor accepted Buyer's offer, subject to necessary approvals.

## IV.    RELIEF REQUESTED

22.    The Debtor respectfully requests the entry of an order, pursuant to 11 U.S.C. §§ 363(b) and (f) and Federal Rules of Bankruptcy Procedure 6004 and 9014, authorizing it to sell the Property free and clear of liens, claims and interests for the Purchase Price and upon such other terms and conditions as more particularly stated in the REPC.

23.    The Debtor also moves the Court to authorize the Debtor to pay at closing: (i) all ad valorem property taxes due in connection with the Property as of the time of closing, including a pro-rated amount of the estimated 2010 property taxes to be reflected as a credit against the Purchase Price; (ii) closing costs ordinarily and usually borne by a seller at closing, as more particularly described in the REPC; and (iii) broker's commissions in the aggregate amount of six percent (6%) of the Purchase Price, including (a) $6,600 to the Broker, as seller's broker, (b) $6,600 to Summit Southebys International Realty, as buyer's broker

24.    To the extent the Court determines that liens do or will exist against the Property or the cash proceeds from the sale of the Property, the Debtor further moves the Court, pursuant to 11 U.S.C. § 506(c), to permit the Debtor to recover from the proceeds of the sale an amount sufficient (a) to pay at closing all property taxes and broker's commissions, closing costs and costs of sale, and (b) to reimburse the estate for the post-petition expenses paid or incurred by the Debtor to maintain and insure the Property.

25.    To the extent the Debtor and creditors whose claims are secured by the Property stipulate regarding the amount of such creditors' claim or lien, the Debtor asks the Court to authorize the Debtor to pay such creditors at closing, in amounts and priorities to be specifically ordered by the Court at the hearing on the Motion.

26.    Finally, the Debtor respectfully requests that, under the circumstances of this case, the Court waive the ten day stay otherwise imposed by Federal Rule Bankruptcy Procedure 6004(h).

## V.    BASIS FOR RELIEF REQUESTED

27.    Pursuant to section 363(b) of the Bankruptcy Code and subject to the requirement of prior notice and a hearing, the Debtor is empowered to "use, sell, or

lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b).

28.    The Debtor, in the exercise of its business judgment, has determined that the proposed sale of the Property pursuant to the terms of the REPC is in the best interests of his chapter 11 bankruptcy estate.  The proceeds of the sale will reduce and/or eliminate the Debtor's obligations to secured creditors, will relieve the Debtor of the burden of administrative expenses to maintain and insure the Property and, to the extent excess proceeds result from the sale, may be available for payment of administrative expenses, distribution to unsecured creditors and/or, after payment in full of unsecured creditors of HRAF, distribution to Harbor for payment of its creditors.

29.    Pursuant to section 363(f) of the Bankruptcy Code and subject to the requirement of prior notice and a hearing, the Debtor is empowered to "sell property … free and clear of any interest in such property" if, among other things, the holder of such an interest "could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest." 11 U.S.C. § 363(f)(5).

30.    With respect to the interests in the Property, each holder of a secured claim, encumbrance or other interest could be compelled to accept a money satisfaction of its lien.

31.    Pursuant to section 506(c) of the Bankruptcy Code, the Debtor "may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim, including the payment of ad valorem property taxes with respect to the property." 11 U.S.C. § 506(c).

32.    At a minimum, the Debtor is entitled to recover from the proceeds of the sale of the Property an amount sufficient to pay the broker's commissions and the closing costs incidental to the sale.

33.    The Debtor further is entitled to recover from the proceeds of the sale of the Property an amount sufficient to reimburse the estate for the utility charges, costs of insurance and maintenance expenses paid or incurred in connection with the Property on or after the Petition Date.

34.    Pursuant to Federal Rule Bankruptcy Procedure 6004(h), an order approving the sale of property of the estate ordinarily is stayed for a period of ten (10) days.  Cause exists in the instant Case to order otherwise.

35.    As stated in the 1999 Advisory Committee Note to Rule 6004, the purpose of the ten-day stay is "to provide sufficient time for a party to request a stay pending appeal of an order authorizing the use, sale, or lease of property … before the order is implemented."  Accordingly, if no party objects to the Motion, then the stay would serve no purpose because no party would have the right to appeal.

36.    Additionally, a stay of the sale order would negatively impact the Debtor and the estate.  First, the sale is time sensitive.  Second, every day of delay increases the expense and burden of the Property to the estate and results in a decrease in the net proceeds payable to the Debtor.  Among other things, 2010 property taxes are pro-rated.  Additionally, the Debtor is incurring the costs of insurance and utility service to the Property.  The sooner the Property can be sold, the sooner these expenses can be cut off.

## VI.    PRAYER FOR RELIEF

WHEREFORE, the Debtor asks that this Court enter an Order:

A.    GRANTING the Motion;

B.    pursuant to 11 U.S.C. §§ 363(b) and (f) and Federal Rules of Bankruptcy Procedure 6004 and 9014, authorizing the Debtor to sell the Property free and clear of liens, claims and interests, for the Purchase Price and upon such other terms and conditions as more particularly stated in the REPC;

C.     authorizing the Debtor to pay at closing: (i) all ad valorem property taxes due in connection with the Property as of the time of closing, including a pro-rated amount of the estimated 2009 property taxes to be reflected as a credit against the Purchase Price; (ii) closing costs ordinarily and usually borne by a seller at closing, as more particularly described in the REPC; (iii) HOA fees as described above; and (iv) broker's commissions in the aggregate amount of six percent (6%) of the Purchase Price, including (a) $6,600 to the Broker, as seller's broker, and (b) $6,600 to Summit Southebys International Realty, as buyer's broker;

D.     to permit the Debtor to recover from the proceeds of the sale an amount sufficient (a) to pay at closing all property taxes and broker's commissions, closing costs and costs of sale, and (b) to reimburse the estate for the post-petition expenses paid or incurred by the Debtor to maintain and insure the property;

E.     for cause shown, waiving the ten-day stay otherwise imposed by Federal Rule Bankruptcy Procedure 6004(h); and

F.     granting such other and further relief as the Court deems just and proper.

 Dated:        September 13, 2010

                                   PARSONS KINGHORN HARRIS


                                   /s/  George Hofmann
                                   George Hofmann
                                   Proposed Attorneys for Debtor-in-
                                   Possession HRAF Holdings, LLC

# EXHIBIT A




# REAL ESTATE PURCHASE CONTRACT
# FOR LAND

This is a legally binding Real Estate Purchase Contract ("REPC"). If you desire legal or tax advice, consult your attorney or tax advisor.

## OFFER TO PURCHASE AND EARNEST MONEY DEPOSIT

On this __27__ day of ___July___, 20_10_ ("Offer Reference Date") ___JE Investments, LLC___ ("Buyer") offers to purchase from ___HRAF Holdings, LLC___ ("Seller") the Property described below and [ ] delivers to the Buyer's Brokerage with this offer, or [ ] agrees to deliver no later than four (4) calendar days after Acceptance (as defined in Section 23), Earnest Money in the amount of $___10,000.00___ in the form of ___Personal Check___. After Acceptance of the REPC by Buyer and Seller, and receipt of the Earnest Money by the Brokerage, the Brokerage shall have four (4) calendar days in which to deposit the Earnest Money into the Brokerage Real Estate Trust Account.

Buyer's Brokerage ___Summit Sotheby's Realty-MCrvin___   Phone: ___435-649-1884___

Received by: ___Eastman___ (signature)   on ___6-1-10___ (Date)
(Signature above acknowledges receipt of Earnest Money)

## OTHER PROVISIONS

1. **PROPERTY:** ___2888   Blue Sage Park City Extended UT 84098___
also described as: PSKY-2E
City of ___Park City Extended___   County of ___Summit___, State of Utah, Zip ___84098___ (the "Property").
Any reference below to the term "Property" shall include the Property described above, together with the Included Items and water rights/water shares, if any, referenced in Sections 1.1, and 1.3.
   1.1   Included Items (specify) N/A
   1.2   Excluded Items (specify) N/A
   1.3   **Water Service.** The Purchase Price for the Property shall include all water rights/water shares, if any, that are the legal source for Seller's current culinary water service and irrigation water service, if any, to the Property. The water rights/water shares will be conveyed or otherwise transferred to Buyer at Closing by applicable deed or legal instruments. The following water rights/water shares, if applicable, are specifically excluded from this sale: N/A

2. **PURCHASE PRICE.** The Purchase Price for the Property is $_220,000_. Except as provided in this Section, the Purchase Price shall be paid as provided in Sections 2(a) through 2(d) below. Any amounts shown in 2(b) and 2(d) may be adjusted as deemed necessary by Buyer and the Lender.

| | | |
|---|---|---|
| $___10,000.00___ | (a) | **Earnest Money Deposit.** Under certain conditions described in the REPC, this deposit may become totally non-refundable. |
| $_____ | (b) | **New Loan.** Buyer may apply for mortgage loan financing (the "Loan") on terms acceptable to Buyer. |
| $_____ | (c) | **Seller Financing** (see attached Seller Financing Addendum) |
| $_210,000_ | (d) | **Balance of Purchase Price in Cash at Settlement** |
| $_220,000_ | | **PURCHASE PRICE. Total of lines (a) through (d)** |

3. **SETTLEMENT AND CLOSING.**
   3.1   **Settlement.** Settlement shall take place no later than the Settlement Deadline referenced in Section 24(d), or as otherwise mutually agreed by Buyer and Seller in writing. "Settlement" shall occur only when all of the following have been completed: (a) Buyer and Seller have signed and delivered to each other or to the escrow/closing office all documents required by the REPC, by the Lender, by the title insurance and escrow/closing offices, by written escrow instructions (including any split closing instructions, if applicable), or by applicable law; (b) any monies required to be paid by Buyer or Seller under these documents (except for the proceeds of any new loan) have been delivered by Buyer or Seller to the other party, or to the escrow/closing office, in the form of cash, wire transfer, cashier's check, or other form acceptable to the escrow/closing office.

Page 1 of 6 pages    Buyer's Initials _____ Date _7/27/10_    Seller's Initials _____ Date _7/29/10_

This form is authorized for use by Sharon Eastman, a member of the Park City Board of Realtors. **instanet forms**

3.2   **Prorations.** All prorations, including, but not limited to, homeowner's association dues, property taxes for the current year, rents, and interest on assumed obligations, if any, shall be made as of the Settlement Deadline referenced in Section 24(d), unless otherwise agreed to in writing by the parties. Such writing could include the settlement statement. The provisions of this Section 3.2 shall survive Closing.

3.3   **Greenbelt.** If any portion of the Property is presently assessed as "Greenbelt" the payment of any roll-back taxes assessed against the Property shall be paid for by: [✓] **Seller** [ ] **Buyer** [ ] **Split Equally Between Buyer and Seller** [ ] **Other (explain)** _____

3.4   **Special Assessments.** Any assessments for capital improvements as approved by the HOA (pursuant to HOA governing documents) or as assessed by a municipality or special improvement district, prior to the Settlement Deadline shall be paid for by: [✓] **Seller** [ ] **Buyer** [ ] **Split Equally Between Buyer and Seller** [ ] **Other (explain)** _____

The provisions of this Section 3.4 shall survive Closing.

3.5   **Fees/Costs/Payment Obligations.** Unless otherwise agreed to in writing, Seller and Buyer shall each pay one-half (1/2) of the fee charged by the escrow/closing office for its services in the settlement/closing process. Tenant deposits (including any prepaid rents) shall be paid or credited by Seller to Buyer at Settlement. Buyer agrees to be responsible for homeowners' association and private and public utility service transfer fees, if any, and all utilities and other services provided to the Property after the Settlement Deadline. The escrow/closing office is authorized and directed to withhold from Seller's proceeds at Closing, sufficient funds to pay off on Seller's behalf all mortgages, trust deeds, judgments, mechanic's liens, tax liens and warrants. The provisions of this Section 3.5 shall survive Closing.

3.6   **Closing.** For purposes of the REPC, "Closing" means that: (a) Settlement has been completed; (b) the proceeds of any new loan have been delivered by the Lender to Seller or to the escrow/closing office; and (c) the applicable Closing documents have been recorded in the office of the county recorder. The actions described in 3.6 (b) and (c) shall be completed within four calendar days after Settlement.

4.  **POSSESSION.** Seller shall deliver physical possession of the Property to Buyer as follows: [✓] **Upon Closing;** [ ] _____ **Hours after Closing;** [ ] _____ **Calendar Days after Closing;** [ ] **Other (explain)** _____

Any contracted rental of the Property prior to or after Closing, between Buyer and Seller, shall be by separate written agreement. Seller and Buyer shall each be responsible for any insurance coverage each party deems necessary for the Property. Seller agrees to deliver the Property to Buyer free of debris and personal belongings. The provisions of this Section 4 shall survive Closing.

5.  **CONFIRMATION OF AGENCY DISCLOSURE.** Buyer and Seller acknowledge prior written receipt of agency disclosure provided by their respective agent that has disclosed the agency relationships confirmed below. At the signing of the REPC:

Seller's Agent _____Brian  Gottfredson_____, represents [✓] **Seller** [ ] **both Buyer and Seller as a Limited Agent;**
Seller's Brokerage Summit Sotheby's Realty-Park, represents [ ] **Seller** [✓] **both Buyer and Seller as a Limited Agent;**
Buyer's Agent _____Sharon  Eastman_____, represents [✓] **Buyer** [ ] **both Buyer and Seller as a Limited Agent;**
Buyer's Brokerage Summit Sotheby's Realty-MCrvd represents [ ] **Buyer** [✓] **both Buyer and Seller as a Limited Agent.**

6.  **TITLE & TITLE INSURANCE.**

6.1   **Title to Property.** Seller represents that Seller has fee title to the Property and will convey marketable title to the Property to Buyer at Closing by general warranty deed. Buyer does agree to accept title to the Property subject to the contents of the Commitment for Title Insurance (the "Commitment") provided by Seller under Section 7, and as reviewed and approved by Buyer under Section 8. Buyer also agrees to accept title to the Property subject to any existing leases rental and property management agreements affecting the Property not expiring prior to Closing which were provided to Buyer pursuant to Section 7(e). The provisions of this Section 6.1 shall survive Closing.

6.2   **Title Insurance.** At Settlement, Seller agrees to pay for and cause to be issued in favor of Buyer, through the title insurance agency that issued the Commitment, the most current version of an ALTA standard coverage owner's policy of title insurance. Any additional title insurance coverage desired by Buyer shall be at Buyer's expense.

7.  **SELLER DISCLOSURES.** No later than the Seller Disclosure Deadline referenced in Section 24(a), Seller shall provide to Buyer the following documents in hard copy or electronic format which are collectively referred to as the "Seller Disclosures":

(a) a written Seller Property Condition Disclosure (Land) for the Property, completed, signed and dated by Seller as provided in Section10.2;
(b) a Commitment for Title Insurance as referenced in Section 6.1;
(c) a copy of any restrictive covenants (CC&R's), rules and regulations affecting the Property;
(d) a copy of the most recent minutes, budget and financial statement for the homeowners' association, if any;
(e) a copy of any lease, rental, and property management agreements affecting the Property not expiring prior to Closing;

Page 2 of 6 pages      Buyer's Initials _____ Date 12-7 10     Seller's Initials _____ Date 7/2?/10

This form is authorized for use by Sharon Eastman, a member of the Park City Board of Realtors.

(f) evidence of any water rights and/or water shares referenced in Section 1.3;
(g) written notice of any claims and/or conditions known to Seller relating to environmental problems; and violation of any CC&R's, federal, state or local laws, and building or zoning code violations; and
(h) Other (specify) _____

**8. BUYER'S CONDITIONS OF PURCHASE.**

**8.1     DUE DILIGENCE CONDITION.** Buyer's obligation to purchase the Property: [✓] IS [ ] IS NOT conditioned upon Buyer's Due Diligence as defined in this Section 8.1(a) below. This condition is referred to as the "Due Diligence Condition." If checked in the affirmative, Sections 8.1(a) through 8.1(c) apply; otherwise they do not.

**(a) Due Diligence Items.** Buyer's Due Diligence shall consist of Buyer's review and approval of the contents of the Seller Disclosures referenced in Section 7, and any other tests, evaluations and verifications of the Property deemed necessary or appropriate by Buyer, such as: the physical condition of the Property; the existence of any hazardous substances, environmental issues or geologic conditions; the square footage or acreage of the Property; the costs and availability of flood insurance, if applicable; water source, availability and quality; the location of property lines; regulatory use restrictions or violations; fees for services such as HOA dues, municipal services, and utility costs; convicted sex offenders residing in proximity to the Property; and any other matters deemed material to Buyer in making a decision to purchase the Property. Unless otherwise provided in the REPC, all of Buyer's Due Diligence shall be paid for by Buyer and shall be conducted by individuals or entities of Buyer's choice. Seller agrees to cooperate with Buyer's Due Diligence. Buyer agrees to pay for any damage to the Property resulting from any such inspections or tests during the Due Diligence.

**(b) Buyer's Right to Cancel or Resolve Objections.** If Buyer determines, in Buyer's sole discretion, that the results of the Due Diligence are unacceptable, Buyer may either: (i) no later than the Due Diligence Deadline referenced in Section 24(b), cancel the REPC by providing written notice to Seller, whereupon the Earnest Money Deposit shall be released to Buyer without the requirement of further written authorization from Seller; or (ii) no later than the Due Diligence Deadline referenced in Section 24(b), resolve in writing with Seller any objections Buyer has arising from Buyer's Due Diligence.

**(c) Failure to Cancel or Resolve Objections.** If Buyer fails to cancel the REPC or fails to resolve in writing any objections Buyer has arising from Buyer's Due Diligence, as provided in Section 8.1(b), Buyer shall be deemed to have waived the Due Diligence Condition.

**8.2     APPRAISAL CONDITION.** Buyer's obligation to purchase the Property: [✓] IS [ ] IS NOT conditioned upon the Property appraising for not less than the Purchase Price. This condition is referred to as the "Appraisal Condition." If checked in the affirmative, Sections 8.2(a) and 8.2(b) apply; otherwise they do not.

**(a) Buyer's Right to Cancel.** If after completion of an appraisal by a licensed appraiser, Buyer receives written notice from the Lender or the appraiser that the Property has appraised for less than the Purchase Price (a "Notice of Appraised Value"), Buyer may cancel the REPC by providing written notice to Seller (with a copy of the Notice of Appraised Value) no later than the Financing & Appraisal Deadline referenced in Section 24(c); whereupon the Earnest Money Deposit shall be released to Buyer without the requirement of further written authorization from Seller.

**(b) Failure to Cancel.** If the REPC is not cancelled as provided in this section 8.2(a), Buyer shall be deemed to have waived the Appraisal Condition.

**8.3     FINANCING CONDITION.** Buyer's obligation to purchase the property: [ ] IS [✓] IS NOT conditioned upon Buyer obtaining the Loan referenced in Section 2(b). This condition is referred to as the "Financing Condition." If checked in the affirmative, Sections 8.3(a) and 8.3(b) apply; otherwise they do not. If the Financing Condition applies, Buyer agrees to work diligently and in good faith to obtain the Loan.

**(a) Buyer's Right to Cancel Before the Financing & Appraisal Deadline.** If Buyer, in Buyer's sole discretion, is not satisfied with the terms and conditions of the Loan, Buyer may cancel the REPC by providing written notice to Seller no later than the Financing & Appraisal Deadline referenced in Section 24(c); whereupon the Earnest Money Deposit shall be released to Buyer without the requirement of further written authorization from Seller.

**(b) Buyer's Right to Cancel After the Financing & Appraisal Deadline.** If after expiration of the Financing & Appraisal Deadline referenced in Section 24(c), Buyer fails to obtain the Loan, meaning that the proceeds of the Loan have not been delivered by the Lender to Seller or to the escrow/closing office as required under Section 3.6 of the REPC, then Buyer or Seller may cancel the REPC by providing written notice to the other party; whereupon the Earnest Money Deposit, or Deposits, if applicable (see Section 8.4 below), shall be released to Seller without the requirement of further written authorization from Buyer. In the event of such cancellation, Seller agrees to accept as Seller's exclusive remedy, the Earnest Money Deposit, or Deposits, if applicable, as liquidated damages. Buyer and Seller agree that liquidated damages would be difficult and impractical to calculate, and the Earnest Money Deposit, or Deposits, if applicable, is a fair and reasonable estimate of Seller's damages in the event Buyer fails to obtain the Loan.

Page 3 of 6 pages        Buyer's Initials _____ Date 7/27/10        Seller's Initials _____ Date 7/29/10

**8.4    ADDITIONAL EARNEST MONEY DEPOSIT.** If the REPC has not been previously cancelled by Buyer as provided in Sections 8.1, 8.2 or 8.3(a), then no later than the Due Diligence Deadline referenced in Section 24(b), or the Financing & Appraisal Deadline referenced in Section 24(c), whichever is later, Buyer: [✓] WILL [ ] WILL NOT deliver to the Buyer's Brokerage, an Additional Earnest Money Deposit in the amount of $ ___20,000.00___. The Earnest Money Deposit and the Additional Earnest Money Deposit, if applicable, are sometimes referred to herein as the "Deposits". The Earnest Money Deposit, or Deposits, if applicable, shall be credited toward the Purchase Price at Closing.

**9.  ADDENDA.** There [✓] ARE [ ] ARE NOT addenda to the REPC containing additional terms. If there are, the terms of the following addenda are incorporated into the REPC by this reference: [ ] **Addendum No.** ___1___
[ ] **Seller Financing Addendum** [ ] **Other (specify)** _____

**10.  AS-IS CONDITION OF PROPERTY.**
    **10.1  Condition of Property/Buyer Acknowledgements.** Buyer acknowledges and agrees that in reference to the physical condition of the Property: (a) Buyer is purchasing the Property in its "As-Is" condition without expressed or implied warranties of any kind; (b) Buyer shall have, during Buyer's Due Diligence as referenced in Section 8.1, an opportunity to completely inspect and evaluate the condition of the Property; and (c) if based on the Buyer's Due Diligence, Buyer elects to proceed with the purchase of the Property, Buyer is relying wholly on Buyer's own judgment and that of any contractors or inspectors engaged by Buyer to review, evaluate and inspect the Property.
    **10.2  Condition of Property/Seller Acknowledgements.** Seller acknowledges and agrees that in reference to the physical condition of the Property, Seller agrees to: (a) disclose in writing to Buyer defects in the Property known to Seller that materially affect the value of the Property that cannot be discovered by a reasonable inspection by an ordinary prudent Buyer; (b) carefully review, complete, and provide to Buyer a written Seller Property Condition Disclosure (Land) as stated in Section 7(a); and (c) deliver the Property to Buyer in substantially the same general condition as it was on the date of Acceptance, as defined in Section 23. The provisions of Sections 10.1 and 10.2 shall survive Closing.

**11. FINAL PRE-SETTLEMENT INSPECTION.**
    **11.1    Pre-Settlement Inspection.** At any time prior to Settlement, Buyer may conduct a final pre-Settlement inspection of the Property to determine only that the Property is "as represented," meaning that the items referenced in Sections 1.1, 1.3 and 8.1(b)(ii) ("the items") are respectively present, repaired or corrected as agreed. The failure to conduct a pre-Settlement inspection or to claim that an item is not as represented shall not constitute a waiver by Buyer of the right to receive, on the date of possession, the items as represented. If the items are not as represented, Seller agrees to cause all applicable items to be corrected, repaired or replaced (the "Work") prior to the Settlement Deadline referenced in Section 24(d).
    **11.2    Escrow to Complete the Work.** If, as of Settlement, the Work has not been completed, then Buyer and Seller agree to withhold in escrow at Settlement a reasonable amount agreed to by Seller, Buyer (and Lender, if applicable), sufficient to pay for completion of the Work. If the Work is not completed within thirty (30) calendar days after the Settlement Deadline, the amount so escrowed may, subject to Lender's approval, be released to Buyer as liquidated damages for failure to complete the Work. The provisions of this Section 11.2 shall survive Closing.

**12. CHANGES DURING TRANSACTION.** Seller agrees that from the date of Acceptance until the date of Closing, none of the following shall occur without the prior written consent of Buyer: (a) no changes in any leases, rental or property management agreements shall be made; (b) no new lease, rental or property management agreements shall be entered into; (c) no substantial alterations or improvements to the Property shall be made or undertaken; (d) no further financial encumbrances to the Property shall be made, and (e) no changes in the legal title to the Property shall be made.

**13. AUTHORITY OF SIGNERS.** If Buyer or Seller is a corporation, partnership, trust, estate, limited liability company or other entity, the person signing the REPC on its behalf warrants his or her authority to do so and to bind Buyer and Seller.

**14. COMPLETE CONTRACT.** The REPC together with its addenda, any attached exhibits, and Seller Disclosures (collectively referred to as the "REPC"), constitutes the entire contract between the parties and supersedes and replaces any and all prior negotiations, representations, warranties, understandings or contracts between the parties whether verbal or otherwise. The REPC cannot be changed except by written agreement of the parties.

**15. MEDIATION.** Any dispute relating to the REPC arising prior to or after Closing: [ ] SHALL [✓] MAY AT THE OPTION OF THE PARTIES first be submitted to mediation. Mediation is a process in which the parties meet with an impartial person who helps to resolve the dispute informally and confidentially. Mediators cannot impose binding decisions. The parties to the dispute must agree before any settlement is binding. The parties will jointly appoint an acceptable mediator and share equally in the cost of such mediation. If mediation fails, the other procedures and remedies available under the REPC shall apply. Nothing in this Section 15 prohibits any party from seeking emergency legal or equitable relief, pending mediation. The provisions of this Section 15 shall survive Closing.

Page 4 of 6 pages        Buyer's Initials _____        Date 7/27/10        Seller's Initials _____        Date 7/29/10

**16. DEFAULT.**

**16.1 Buyer Default.** If Buyer defaults, Seller may elect one of the following remedies: (a) cancel the REPC and retain the Earnest Money Deposit, or Deposits, if applicable, as liquidated damages; (b) maintain the Earnest Money Deposit, or Deposits, if applicable, in trust and sue Buyer to specifically enforce the REPC; or (c) return the Earnest Money Deposit, or Deposits, if applicable, to Buyer and pursue any other remedies available at law.

**16.2 Seller Default.** If Seller defaults, Buyer may elect one of the following remedies: (a) cancel the REPC, and in addition to the return of the Earnest Money Deposit, or Deposits, if applicable, Buyer may elect to accept from Seller, as liquidated damages, a sum equal to the Earnest Money Deposit, or Deposits, if applicable; or (b) maintain the Earnest Money Deposit, or Deposits, if applicable, in trust and sue Seller to specifically enforce the REPC; or (c) accept a return of the Earnest Money Deposit, or Deposits, if applicable, and pursue any other remedies available at law. If Buyer elects to accept liquidated damages, Seller agrees to pay the liquidated damages to Buyer upon demand.

**17. ATTORNEY FEES AND COSTS/GOVERNING LAW.** In the event of litigation or binding arbitration to enforce the REPC, the prevailing party shall be entitled to costs and reasonable attorney fees. However, attorney fees shall not be awarded for participation in mediation under Section 15. This contract shall be governed by and construed in accordance with the laws of the State of Utah. The provisions of this Section 17 shall survive Closing.

**18. NOTICES.** Except as provided in Section 23, all notices required under the REPC must be: (a) in writing; (b) signed by the Buyer or Seller giving notice; and (c) received by the Buyer or the Seller, or their respective agent, or by the brokerage firm representing the Buyer or Seller, no later than the applicable date referenced in the REPC.

**19. NO ASSIGNMENT.** The REPC and the rights and obligations of Buyer hereunder, are personal to Buyer. The REPC may not be assigned by Buyer without the prior written consent of Seller. Provided, however, the transfer of Buyer's interest in the REPC to any business entity in which Buyer holds a legal interest, including, but not limited to, a family partnership, family trust, limited liability company, partnership, or corporation (collectively referred to as a "Permissible Transfer"), shall not be treated as an assignment by Buyer that requires Seller's prior written consent. Furthermore, the inclusion of "and/or assigns" or similar language on the line identifying Buyer on the first page of the REPC shall constitute Seller's written consent only to a Permissible Transfer.

**20. INSURANCE & RISK OF LOSS.**

**20.1    Insurance Coverage.** As of Closing, Buyer shall be responsible to obtain such casualty and liability insurance coverage on the Property in amounts acceptable to Buyer and Buyer's Lender, if applicable.

**20.2    Risk of Loss.** If prior to Closing, any part of the Property is damaged or destroyed by fire, vandalism, flood, earthquake, or act of God, the risk of such loss or damage shall be borne by Seller; provided however, that if the cost of repairing such loss or damage would exceed ten percent (10%) of the Purchase Price referenced in Section 2, Buyer may elect to either: (i) cancel the REPC by providing written notice to the other party, in which instance the Earnest Money, or Deposits, if applicable, shall be returned to Buyer; or (ii) proceed to Closing, and accept the Property in its "As-Is" condition.

**21. TIME IS OF THE ESSENCE.** Time is of the essence regarding the dates set forth in the REPC. Extensions must be agreed to in writing by all parties. Unless otherwise explicitly stated in the REPC: (a) performance under each Section of the REPC which references a date shall absolutely be required by 5:00 PM Mountain Time on the stated date; and (b) the term "days" and "calendar days" shall mean calendar days and shall be counted beginning on the day following the event which triggers the timing requirement (e.g. Acceptance). Performance dates and times referenced herein shall not be binding upon title companies, lenders, appraisers and others not parties to the REPC, except as otherwise agreed to in writing by such non-party.

**22. ELECTRONIC TRANSMISSION AND COUNTERPARTS.** Electronic transmission (including email and fax) of a signed copy of the REPC, any addenda and counteroffers, and the retransmission of any signed electronic transmission shall be the same as delivery of an original. The REPC and any addenda and counteroffers may be executed in counterparts.

**23. ACCEPTANCE.** "Acceptance" occurs only when all of the following have occurred: (a) Seller or Buyer has signed the offer or counteroffer where noted to indicate acceptance; and (b) Seller or Buyer or their agent has communicated to the other party or to the other party's agent that the offer or counteroffer has been signed as required.

Page 5 of 6 pages        Buyer's Initials: _____ Date 7/27/10        Seller's Initials: _____ Date 7/29/10

This form is authorized for use by Sharon Eastman, a member of the Park City Board of Realtors.

InstanetForms

24. CONTRACT DEADLINES.  Buyer and Seller agree that the following deadlines shall apply to the REPC:

| | |
|---|---|
| (a) Seller Disclosure Deadline | 3 days after third party approval (Date) |
| (b) Due Diligence Deadline | 10 days after third party approval (Date) |
| (c) Financing & Appraisal Deadline | 10 days after third party approval (Date) |
| (d) Settlement Deadline | 15 days after third party approval (Date) |

25. OFFER AND TIME FOR ACCEPTANCE.  Buyer offers to purchase the Property on the above terms and conditions. If Seller does not accept this offer by  5:00  [  ] AM [X] PM Mountain Time on  7/29/10  (Date), this offer shall lapse; and the Brokerage shall return any Earnest Money Deposit to Buyer.

_____  7/27/10   _____
(Buyer's Signature)       (Offer Date)         (Buyer's Signature)                (Offer Date)

JH Investments,LLC-John Henry
(Buyer's Names) (PLEASE PRINT)          (Notice Address)     (Zip Code)              (Phone)

_____     _____
(Buyer's Names) (PLEASE PRINT)          (Notice Address)     (Zip Code)              (Phone)

## ACCEPTANCE/COUNTEROFFER/REJECTION

CHECK ONE:
[  ] ACCEPTANCE OF OFFER TO PURCHASE: Seller Accepts the foregoing offer on the terms and conditions specified above.
[X] COUNTEROFFER: Seller presents for Buyer's Acceptance the terms of Buyer's offer subject to the exceptions or modifications as specified in the attached ADDENDUM NO. # 2 .
[  ] REJECTION: Seller rejects the foregoing offer.

_____  7/29/10 2:20 PM   _____
(Seller's Signature)     (Date)    (Time)       (Seller's Signature)          (Date)    (Time)

BRAF Holdings, LLC          7659 S 700 West                84047
(Seller's Names) (PLEASE PRINT)         (Notice Address)     (Zip Code)              (Phone)

_____     _____
(Seller's Names) (PLEASE PRINT)         (Notice Address)     (Zip Code)              (Phone)

This form is COPYRIGHTED by the UTAH ASSOCIATION OF REALTORS® for use solely by its members. Any unauthorized use, modification, copying or distribution without written consent is prohibited. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION OF THIS FORM IN ANY SPECIFIC TRANSACTION. IF YOU DESIRE SPECIFIC LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

COPYRIGHT© UTAH ASSOCIATION OF REALTORS® - 7.4.04 - REVISED – 4.22.10 - ALL RIGHTS RESERVED          UAR FORM 19

Page 6 of 6 pages      Buyer's Initials _____ Date 7/27/10      Seller's Initials _____ Date 7/29/10

This form is authorized for use by Sharon Eastman, a member of the Park City Board of Realtors.          InstanCet forms

Page __1__ of __1__

# ADDENDUM NO. 1
## TO
### REAL ESTATE PURCHASE CONTRACT

THIS IS AN [X] ADDENDUM [ ] COUNTEROFFER to that REAL ESTATE PURCHASE CONTRACT (the "REPC") with an Offer Reference Date of _____07/27/10_____, including all prior addenda and counteroffers, between _____ as Buyer, and HRAF Holdings, LLC _____ as Seller, regarding the Property located at _____2888 Blue Sage, Park City Extended, UT 84098_____. The following terms are hereby incorporated as part of the REPC:

1. Purchase price to be
2. Promontory Amendment #1 to Real Estate Purchase Contract to become part of this agreement.
3. This offer is subject to Bank of America's approval (Third Party) Buyer understands that the timeline for such approval is beyond Seller's control and that seller will use best efforts to expedite the approval process.
4. At any time prior to Third Party approval, buyer may elect to withdraw offer with written notice to Seller and all Earnest Money on deposit shall be refunded to Buyer with no recourse by Seller.
5. At the time Buyer and Seller have come to terms subject to Third Party approval, the property shall be deemed under contract and the Seller shall not pursue other purchasers for the property.

BUYER AND SELLER AGREE THAT THE CONTRACT DEADLINES REFERENCED IN SECTION 24 OF THE REPC (CHECK APPLICABLE BOX): [ ] REMAIN UNCHANGED [X] ARE CHANGED AS FOLLOWS:_____

To the extent the terms of this ADDENDUM modify or conflict with any provisions of the REPC, including all prior addenda and counteroffers, these terms shall control. All other terms of the REPC, including all prior addenda and counteroffers, not modified by this ADDENDUM shall remain the same. [X] Seller [ ] Buyer shall have until __5:00__ [ ] AM [ ] PM Mountain Time on _____07/29/10_____ (Date), to accept the terms of this ADDENDUM in accordance with the provisions of Section 23 of the REPC. Unless so accepted, the offer as set forth in this ADDENDUM shall lapse.

[X] Buyer [ ] Seller Signature        7/27/10        (Date)        (Time)        [ ] Buyer [ ] Seller Signature        (Date)        (Time)

### ACCEPTANCE/COUNTEROFFER/REJECTION

CHECK ONE:
[ ] ACCEPTANCE: [ ] Seller [ ] Buyer hereby accepts the terms of this ADDENDUM.

[X] COUNTEROFFER: [ ] Seller [ ] Buyer presents as a counteroffer the terms of attached ADDENDUM NO. 2

(Signature)        7/29/10   2.20        (Date)        (Time)        (Signature)        (Date)        (Time)

[ ] REJECTION: [ ] Seller [ ] Buyer rejects the foregoing ADDENDUM.

(Signature)        (Date)        (Time)        (Signature)        (Date)        (Time)

THIS FORM APPROVED BY THE UTAH REAL ESTATE COMMISSION AND THE OFFICE OF THE UTAH ATTORNEY GENERAL, EFFECTIVE AUGUST 5, 2003. IT REPLACES AND SUPERSEDES ALL PREVIOUSLY APPROVED VERSIONS OF THIS FORM.

Instanet forms

This form is authorized for use by Sharon Eastman, a member of the Park City Board of Realtors.

 Utah Association of REALTORS®



## EXCLUSIVE BUYER-BROKER AGREEMENT & AGENCY DISCLOSURE
### THIS IS A LEGALLY BINDING AGREEMENT - READ CAREFULLY BEFORE SIGNING
### DESIGNATED AGENCY BROKERAGE

THIS EXCLUSIVE BUYER-BROKER AGREEMENT & AGENCY DISCLOSURE ("Exclusive Buyer-Broker Agreement") is entered into between _____ Summit Sotheby's Realty _____ (the "Company") and _____ John Henry /IH _____ (the "Buyer").
                                                                                                        Investments

1.    **TERM OF AGREEMENT.** The Buyer hereby retains the Company, including _____ Sharon Eastman _____ (the "Buyer's Agent") as the authorized agent for the Company, starting on the Effective Date as defined in section 15 below, and ending at 5:00 P.M. (Mountain Time) on the ____ 1st ____ day of ____ August ____, 2010, or the Closing of the acquisition of a property, which ever occurs first (the "Initial Term"), to act as the exclusive Buyer's Agent in locating and/or negotiating for the acquisition of a property: (a) In _____ Summit _____ County, Utah; or (b) Located at _____ (property address). During the Initial Term of this Exclusive Buyer-Broker Agreement, and any extensions thereof, the Buyer agrees not to enter into another buyer-broker agreement with another real estate agent or brokerage.

2.    **BROKERAGE FEE.** If, during the Initial Term, or any extension of the Initial Term, the Buyer, or any other person acting in the Buyer's behalf, acquires an interest in any real property as referenced in Section 1 above, the Buyer agrees to pay to the Company a brokerage fee in the amount of $_____ or ____ 3.0 ____ % of the acquisition price of the property (the "Brokerage Fee"). If the property acquired by the Buyer is listed with a brokerage, the buyer agent commission ("BAC") paid to the Company by the listing brokerage shall satisfy the Buyer's obligation for the Brokerage Fee shown above provided that the BAC is not less than the amount shown above. If the BAC is less than the amount shown above, Buyer will pay the difference at Closing. If the property is not listed with a brokerage, in the absence of a commission agreement with the owner of the selected property, the Brokerage Fee shown above shall be paid by the Buyer. Unless otherwise agreed to in writing by the Buyer and the Company, the Brokerage Fee shown above shall be due and payable on: (a) if a purchase, the date of recording of the Closing documents;  (b) if a lease, the effective date of the lease; or (c) if an option, the date the option agreement is signed. If the transaction is prevented by default of Buyer, the compensation shall be immediately payable to the Company.

3.    **PROTECTION PERIOD.** If within ____ 4 ____ months after the termination or expiration of this Exclusive Buyer-Broker Agreement, Buyer or any person acting on the Buyer's behalf, enters into an agreement to purchase, exchange, obtain an option on, or lease any property, as referenced in Section 1 above, located for Buyer by Buyer's Agent or the Company, or on which Buyer's Agent negotiates in Buyer's behalf during the Initial Term, Buyer agrees to pay to the Company the Brokerage Fee referenced in Section 2.

4.    **BUYER REPRESENTATIONS/DISCLOSURES.** The Buyer warrants that the Buyer has not entered into any other Exclusive Buyer-Broker Agreement with any other brokerage that is still in force and effect. The Buyer will: (a) In all communications with other real estate agents, notify the agents in advance that the Buyer has entered into this Exclusive Buyer-Broker Agreement with the Company; (b) Furnish the Buyer's Agent with relevant personal and financial information to facilitate the Buyer's ability to acquire a property; (c) Exercise care and diligence in evaluating the physical and legal condition of the property selected by the Buyer; (d) Hold harmless the Company and the Buyer's Agent against any claims as the result of any injuries incurred while inspecting any property; (e) Upon signing of this Exclusive Buyer-Broker Agreement, personally review and sign the Buyer Due Diligence Checklist form; and (f) Disclose to the Buyer's Agent all properties in which the Buyer, as of the date of this Exclusive Buyer-Broker Agreement, is either negotiating to acquire or has a present interest in acquiring.

5.    **AGENCY RELATIONSHIPS.**
    5.1    **Duties of a Buyer's Agent.** By signing this Exclusive Buyer-Broker Agreement, the Buyer designates the Buyer's Agent and the Principal/Branch Broker for the Company (the "Broker"), as agents for the Buyer to locate properties as referenced in Section 1 above for Buyer's consideration and review. The Buyer authorizes the Buyer's Agent or the Broker to appoint another agent in the Company to also represent the Buyer in the event the Buyer's Agent or the Broker will be unavailable to service the Buyer. As agents for the Buyer, the Buyer's Agent and Broker have fiduciary duties to the Buyer that include loyalty, obedience, full disclosure, confidentiality, reasonable care, and any other duties required by law.
    5.2    **Duties of a Limited Agent.** The Buyer understands that the Buyer's Agent and the Broker may now, or in the future, be agents for a seller who may have a property that the Buyer may wish to acquire. Then the Buyer's Agent and the Broker may be acting as Limited Agents - representing both the Buyer and the seller at the same time. A Limited Agent has fiduciary duties to both the Buyer and the seller as required by law. However, some of those duties are "limited" because the agent cannot provide to both parties undivided loyalty, confidentiality and disclosure. For this reason, the Limited Agent is bound by a further duty of neutrality. Being neutral, the Limited Agent may not disclose to either party information likely to weaken the bargaining position of the other – for example, the highest price the Buyer will offer, or the lowest price the seller will accept. However, the Limited Agent will be required to disclose information given to the agent in confidence by the other party if failure to disclose such information would be a material misrepresentation regarding the Property or regarding the ability of the parties to fulfill their obligations. The Buyer is advised that neither the Buyer nor the seller is required to accept a limited agency situation in the Company, and each party is entitled to be represented by its own agent. In the event a limited agency situation arises, the Buyer's Agent and the Broker, as applicable, may only act as Limited Agents based upon a separate Limited Agency Consent Agreement signed by the seller and Buyer.

6.    **PROFESSIONAL ADVICE.** The Company and the Buyer's agent are trained in the marketing of real estate. Neither the Company nor the Buyer's Agent are trained or licensed to provide the Buyer with professional advice regarding the physical condition of any property or regarding legal or tax matters. The Buyer is advised not to rely on the Company, or any agents of the Company, for a determination regarding the physical or legal condition of the property, including, but not limited to: past or present compliance with zoning and building code requirements; the condition of any appliances; the condition of heating/cooling, plumbing, and electrical fixtures and equipment; sewer problems; moisture or other problems in the roof or foundation; the availability and location of utilities; the location of property lines; and the

Page 1 of 2        Buyer's Initials [ ___ ]  Date  6-1-10

This form is authorized for use by Sharon Eastman, a member of the Park City Board of Realtors.

InstanetForms

**JH INVESTMENTS, LLC** '02-09
12405 DEER MOUNTAIN BLVD
KAMAS, UT 84036-9337

1031

31-297/1240 2798
9042871338

6 - 1 - 10
Date

Pay to the
Order of _____ SOTHEBYS _____ | $ 10.000=

TEN THOUSAND & XX _____ Dollars

WELLS FARGO    Wells Fargo Bank, N.A.
               Utah
               wellsfargo.com

For PROMONTORY                                      MP

⑈1240029714⑈ 9042871338⑈ 01031

Utah Association of REALTORS®

# LIMITED AGENCY CONSENT AGREEMENT



### THIS IS A LEGALLY BINDING AGREEMENT - READ CAREFULLY BEFORE SIGNING

*JH Investments, LLC*

Name of Buyer(s): _____ John Henry _____   Name of Seller(s): _____ HRAF Holdings, LLC _____

Agent Representing Buyer: _____ Sharon Eastman _____   Agent representing Seller: _____ Brian Gottfredson _____

Name of Brokerage: _____ Summit Sotheby's Realty-ParkAv _____ (the "Company").

The Buyer and the Seller are both presently using the services of the Company in a possible real estate transaction involving real property located at: 2888    Blue Sage _____ (referred to below as the "Property").

AS THE BUYER AND THE SELLER PROCEED WITH THIS TRANSACTION IT IS IMPORTANT THAT THEY EACH UNDERSTAND THEIR PROFESSIONAL RELATIONSHIP WITH THE REAL ESTATE AGENT(S) AND WITH THE COMPANY. WHAT FOLLOWS IS A BRIEF BUT VERY IMPORTANT EXPLANATION OF THE NATURE OF AGENCY RELATIONSHIPS BETWEEN THE BUYER, THE SELLER, THE COMPANY, AND THE REAL ESTATE AGENTS WORKING IN THIS TRANSACTION.

1.    **Principal or Branch Broker.** Every real estate agent must affiliate with a real estate broker. The broker is referred to as a Principal Broker or a Branch Broker (if the brokerage has a branch office). The broker is responsible for operation of the brokerage and for the professional conduct of all agents.

2.    **Right of Agents to Represent Seller and/or Buyer.** An agent may represent, through the brokerage, a seller who wants to sell property or a buyer who wants to buy property. On occasion, an agent will represent both seller and buyer in the same transaction. When an agent represents a seller, the agent is a "Seller's Agent"; when representing a buyer, the agent is a "Buyer's Agent"; and when representing both seller and buyer, the agent is a "Limited Agent".

3.    **Seller's Agent.** A Seller's Agent works to assist the seller in locating a buyer and in negotiating a transaction suitable to the seller's specific needs. A Seller's Agent has fiduciary duties to the seller which include loyalty, full disclosure, confidentiality, diligence, obedience, reasonable care, and holding safe monies entrusted to the agent.

4.    **Buyer's Agent.** A Buyer's Agent works to assist the buyer in locating and negotiating the acquisition of a property suitable to that buyer's specific needs. A Buyer's Agent has the same fiduciary duties to the buyer that the Seller's Agent has to the Seller.

5.    **Limited Agent.** A Limited Agent represents both seller and buyer in the same transaction and works to assist in negotiating a mutually acceptable transaction. A Limited Agent has fiduciary duties to both seller and buyer. However, those duties are "limited" because the agent cannot provide to both parties undivided loyalty, full confidentiality and full disclosure of all information known to the agent. For this reason, a Limited Agent must remain neutral in the representation of a seller and buyer, and may not disclose to either party information likely to weaken the bargaining position of the other, such as, the highest price the buyer will pay or the lowest price the seller will accept. A Limited Agent must, however, disclose to both parties material information known to the Limited Agent regarding a defect in the Property and/or the ability of each party to fulfill agreed upon obligations, and must disclose information given to the Limited Agent in confidence, by either party, if the failure to disclose would be a material misrepresentation regarding the Property.

6.    **In-House Sale.** If the buyer and the seller are both represented by one or more agents in the same brokerage, that transaction is commonly referred to as an "In-House Sale". Consequently, most In-House Sales involve limited agency because seller and buyer are represented by the same brokerage.

7.    **Conflicts with the In-House Sale.** There are conflicts associated with an In-House Sale; for example, agents affiliated with the same brokerage discuss with each other the needs of their respective buyers or sellers. Such discussions could inadvertently compromise the confidentiality of information provided to those agents. For that reason, the Company has policies designed to protect the confidentiality of discussions between agents and access to confidential client and transaction files.

8.    **Earnest Money Deposit.** Buyer and Seller agree that although the Company is authorized to act as a Limited Agent, Buyer and Seller authorize and direct the Principal Broker for the Company to hold and release the Earnest Money Deposit in accordance with the terms and conditions of the real estate purchase contract, or other written agreement entered into between the Buyer and the Seller.

This form is authorized for use by Sharon Eastman, a member of the Park City Board of Realtors.

instanetforms

9.    **Authorization for Limited Agency.**  The Seller and Buyer are advised that they are not required to accept a limited agency situation in the Company and that Buyer and Seller are each entitled to be represented by their own agent. However, it is the business practice of the Company to participate in In-House Sales. By signing this agreement, Buyer and Seller consent to a limited agency within the Company as provided below:  (Check Applicable Box)

[ ]    A.  One Agent.  The Buyer and the Seller consent to: _____ (name of Agent); and the Principal/Branch Broker representing both the Buyer and the Seller as a Limited Agent as described above.

[x]    B.  Two Agents.  The Buyer and the Seller consent to: _____Brian Gottfredson_____ (Seller's Agent) continuing to represent the Seller; and: _____Sharon Eastman_____ (Buyer's Agent)continuing to represent the Buyer; and the Principal/Branch Broker acting as a Limited Agent as described above.

_____    __6-1-10__    _____    _____
(Buyer) John  Henry                (Date)              (Seller) BRAF  Holdings, LLC    (Date)

_____    _____    _____    _____
(Buyer)                            (Date)              (Seller)                            (Date)

ACCEPTED by the Company:

by: _____    __06-02-10__
    (Signature of Authorized Agent or Broker)        (Date)

This form is COPYRIGHTED by the UTAH ASSOCIATION OF REALTORS® for use solely by its members. Any unauthorized use, modification, copying or distribution without written consent is prohibited. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION OF THIS FORM IN ANY SPECIFIC TRANSACTION. IF YOU DESIRE SPECIFIC LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

COPYRIGHT© UTAH ASSOCIATION OF REALTORS® - REVISED – 3.19.10 - ALL RIGHTS RESERVED                UAR FORM T

          This form is authorized for use by Sharon Eastman, a member of the Park City Board of Realtors.





## ADDENDUM NO. 2
### TO
### REAL ESTATE PURCHASE CONTRACT

THIS IS AN [ ] ADDENDUM [X] COUNTEROFFER to that REAL ESTATE PURCHASE CONTRACT (the "REPC") with an Offer Reference Date of July 27, 2010 _____ including all prior addenda and counteroffers, between JH Investments, LLC _____ as Buyer, and HRAF Holdings, LLC _____ as Seller, regarding the Property located at 2888 BLUE SAGE TRL, Park City, Summit County, UT 84098. The following terms are hereby incorporated as part of the REPC:

1. Purchase Price to be $226,000.00

2. Promontory Amendment #1 to Real Estate Purchase Contract to become a part of this agreement.

3. This offer is subject to Bank of America's approval (Third Party). Buyer understands that the timeline for such approval is beyond seller's control and that seller will use best efforts to expedite the approval process.

4. At any time prior to Third Party approval, buyer may elect to withdraw offer with written notice to seller and all earnest money on deposit shall be refunded to buyer with no recourse by seller.

5. In the event seller cannot obtain Third Party approval within 30 days of acceptance date, either party may elect to cancel contract with earnest money being released to buyer and no recourse by either party.

6. At the time the buyer and seller have come to terms subject to Third Party Approval, the property shall be considered under contract and seller will not actively pursue other purchasers for the property.

7. Non-Occupant of Property Addendum to Real Estate Purchase Contract to become a part of this agreement.

8. Addendum #1 to this offer shall be deleted from this contract and Counter offer #2 shall prevail.

9. Additional earnest money described in section 8.4 shall not be required and is deleted from this contract.

10. Appraisal contingency in 8.2 and Appraisal Deadline in 24(c) will not apply and are deleted from this contact.

11. Settlement deadline to be the later of August 31, 2010 or 5 days after seller receives Third Party Aproval from Bank of America.

BUYER AND SELLER AGREE THAT THE CONTRACT DEADLINES REFERENCED IN SECTION 24 OF THE REPC (CHECK APPLICABLE BOX): [ ] REMAIN UNCHANGED [X] ARE CHANGED AS FOLLOWS: 24(a) to be 08.06.2010, 24(b) to be 08.18.10, 24(c) to be deleted from this offer _____

To the extent the terms of this ADDENDUM modify or conflict with any provisions of the REPC, including all prior addenda and counteroffers, these terms shall control. All other terms of the REPC, including all prior addenda and counteroffers, not modified by this ADDENDUM shall remain the same. [ ] Seller [X] Buyer shall have until 5 : 00 [ ] AM [X] PM Mountain Time on July 30, 2010 _____ (Date), to accept the terms of this ADDENDUM in accordance with the provisions of Section 23 of the REPC. Unless so accepted, the offer as set forth in this ADDENDUM shall lapse.

_____  7/29/10  2:20 PM  X _____  7.30.10  11:20
[ ] Buyer [X] Seller Signature   (Date)   (Time)   [X] Buyer [ ] Seller Signature   (Date)   (Time) A-1

**ACCEPTANCE/COUNTEROFFER/REJECTION**

CHECK ONE:
[X] ACCEPTANCE: [ ] Seller [X] Buyer hereby accepts the terms of this ADDENDUM.
[ ] COUNTEROFFER: [ ] Seller [ ] Buyer presents as a counteroffer the terms of attached ADDENDUM NO. _____

_____    7·30·10    11:00 A.m.    _____
(Signature)            (Date)        (Time)        (Signature)                        (Date)        (Time)

[ ] REJECTION: [ ] Seller [ ] Buyer rejects the foregoing ADDENDUM.

_____                         _____
(Signature)            (Date)        (Time)        (Signature)                        (Date)        (Time)

**THIS FORM APPROVED BY THE UTAH REAL ESTATE COMMISSION AND THE OFFICE OF THE UTAH ATTORNEY GENERAL, EFFECTIVE AUGUST 5, 2003. IT REPLACES AND SUPERSEDES ALL PREVIOUSLY APPROVED VERSIONS OF THIS FORM.**

Buyer's Initials _____        Seller's Initials _____            Addendum No. 2 to REPC

 

# Non-Occupant of Property ADDENDUM
# TO
# REAL ESTATE PURCHASE CONTRACT

THIS IS AN [X] ADDENDUM [ ] COUNTEROFFER to that REAL ESTATE PURCHASE CONTRACT (the "REPC") with an Offer Reference Date of July 27, 2010 including all prior addenda and counteroffers, between JH Investments, LLC as Buyer, and HRAF Holdings, LLC as Seller, regarding the Property located at 2888 BLUE SAGE TRL, Park City, Summit County, UT 84098 (the "Property"). The terms of this Addendum are hereby incorporated as part of the REPC, and to the extent the terms of this Addendum modify or conflict with any provisions of the REPC, including all prior addenda and counteroffers, these terms shall control.

**1 NON-OCCUPANT OF PROPERTY.**

[ ] Buyer's Initials     [ ] Seller's Initials

    **1.1 Non-Occupant of Property.** Seller will not provide as a Seller Disclosure under Section 7 of the REPC, a Seller Property Condition Disclosure form because Seller has insufficient current personal knowledge regarding the physical condition of the Property. Seller represents that Seller **(check applicable boxes) [X] has never occupied the Property [ ] has not occupied the Property for a period of _____ [ ] months [ ] years.**

**ALL OTHER TERMS** of the REPC, including all prior addenda and counteroffers, not modified by this ADDENDUM/ COUNTEROFFER shall remain the same. [ ] **Seller** [X] **Buyer** shall have until 5 : 00 [ ] **AM** [X] **PM** Mountain Time July 30, 2010 to accept the terms of this ADDENDUM/COUNTEROFFER in accordance with the provisions of Section 23 of the REPC. Unless so accepted, the offer as set forth in the ADDENDUM/COUNTEROFFER shall lapse.

| | | | | | |
|---|---|---|---|---|---|
| [ ] Buyer [ ] Seller Signature | 7/29/10 | 2:20 | [ ] Buyer [ ] Seller Signature | 7-30-10 | 11:00 AM |
| | (Date) | (Time) | | (Date) | (Time) |

## ACCEPTANCE/COUNTEROFFER/REJECTION

**CHECK ONE:**

[X] **ACCEPTANCE** of ADDENDUM/COUNTEROFFER: [ ] **Seller** [X] **Buyer** hereby accepts the terms of this ADDENDUM/ COUNTER OFFER.

[ ] **COUNTER OFFER:** [ ] **Seller** [ ] **Buyer** presents as a counteroffer the terms of the attached Counteroffer No ___

[ ] **REJECTION:** [ ] **Seller** [ ] **Buyer** rejects the foregoing ADDENDUM/COUNTER OFFER.

| | | | | | |
|---|---|---|---|---|---|
| [X] Buyer [ ] Seller Signature | 7-30-10 | 11:00 AM | [ ] Buyer [ ] Seller Signature | (Date) | (Time) |

This form is COPYRIGHTED by the UTAH ASSOCIATION OF REALTORS® for use solely by its members. Any unauthorized use, modification, copying or distribution without written consent is prohibited. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION OF THIS FORM IN ANY SPECIFIC TRANSACTION. IF YOU DESIRE SPECIFIC LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

COPYRIGHT© UTAH ASSOCIATION OF REALTORS® – 1999 – REVISED 11–98 – ALL RIGHTS RESERVED          UAR FORM 18G



PROMONTORY
THE RANCH CLUB

## AMENDMENT NO. __1__
## TO
## REAL ESTATE PURCHASE CONTRACT

**THIS AMENDMENT** to that REAL ESTATE PURCHASE CONTRACT (the "REPC") with an Offer Reference Date of July 27, 2010 including all prior addenda and counteroffers, between J.H. Investments, LLC. as Buyer, and HRAF Holdings, LLC. as Seller, regarding the Property located at 2888 Blue Sage Trail Park City, UT 84098. The following terms are hereby incorporated as part of the REPC.

This AMENDMENT highlights various items that can be found in the Promontory Design Guidelines, Promontory CC&Rs, Subdivision Plat, Property Report, Promontory Club Membership Plan, Promontory Club Membership Agreement, Title Report/Commitment, Conservancy Minutes, and the Conservancy Bylaws ("Seller Disclosure Items").

### 1. Property Status

☐         The Property is a home site with no residence constructed on the Property.

☐         The Property is a home site with a residence that has **NOT** received a Final Certificate of Occupancy and Final Design Release.

☐         The Property is a home site with a residence that has received a Final Certificate of Occupancy, but has **NOT** received Final Design Release.

☐         The Property is a home site with a residence that has received a Final Certificate of Occupancy and Final Design Release.

### 2. Membership in the Promontory Club

**2.1** A Golf or Ranch Membership
☐ is available for the Property through a separate transaction with the Promontory Club (provided the current owner maintains their membership in good standing through the Settlement Deadline)

☒ is not available for this Property except through purchase of a membership form the Promontory Club's resigned list.

☐ is available for the Property pursuant to an upgrade for purchase with the Property (provided the current owner maintains their membership in good standing through the Settlement Deadline).

If a membership is desired, Buyer must submit a Membership Application and Agreement and a deposit of ___To Be determined___ ($_____.00) to The Promontory Club on or before the Settlement Deadline. A sample Membership Application and Agreement form will be included among the Seller Disclosure Items received by Buyer prior to the Seller Disclosure Deadline, however the same may require modification to suit the particular circumstances of Buyer's purchase. Buyer(s) will be required to go through the Club's New Member Orientation before any membership privileges or use of the

Club will be extended to Buyer(s). Buyer(s) should contact Promontory's Membership Director, Beth Armstrong, at (435) 333-4204 in order to obtain the proper form of Membership Application and Agreement for their proposed membership application and to schedule a member orientation meeting.

**2.2** Buyer and Seller acknowledge and understand that Buyer will not be able to de-activate a membership associated with the Property.

**2.3** Buyer and Seller acknowledge and understand that Buyer cannot transfer an existing membership to this Property without the express written agreement of The Promontory Club and that memberships in the Promontory Club are only available by separate transaction with the Promontory Club.

## 3. Promontory Architectural Review

**3.1** Buyer and Seller acknowledge that Promontory is a Master Planned Community with specific Architectural Design Guidelines, which must be adhered to in the design and construction of a residence on the Property. Buyer and Seller acknowledge and agree that the Promontory Design Guidelines will be delivered to Buyer as part of the Seller Disclosure Items.

**3.2** In the event the residence on the Property has not received a Final Design Release from the Architectural Review Committee, as defined in the Promontory Design Guidelines, both Buyer and Seller are jointly and severally liable for obtaining such Final Design Release and any liens, charges, or fees associated with the Final Design Release may be imposed on either or both parties.    ONLY the current owner of record of the Property is permitted to apply for Final Design Release.

**3.3** If the residence on the Property has not received a Final Design Release from the Architectural Review Committee of the Promontory Conservancy as of the Settlement Deadline, Buyer and Seller agree that _____ percent (__%) of the Purchase Price will be held in Escrow by the Escrow Agent at closing and will not be released to the Seller until such time that the residence on the Property receives Final Design Release from the Architectural Review Committee.

**3.4** Seller warrants and represents that the residence, if any, constructed (or, if not yet constructed, the plans for the residence planned to be constructed) on the Property is in compliance with the Promontory Design Guidelines and Design Review Approvals.    Buyer and Seller further release and hold all Promontory entities and the Promontory Conservancy harmless from any claims, damages, or disputes with respect to any noncompliant aspect of the residence preventing it from obtaining Final Design Release from the Architectural Review Committee.

## 4. The Promontory Conservancy

**4.1** The Conservancy is the entity responsible for management, maintenance, operation, and control of the common maintenance areas and preserved open space at Promontory; is responsible Architectural review and compliance; maintains Promontory roadways; and oversees the general governance of the Promontory Community operating similar to a homeowners association found in other communities.

**4.2** Buyer and Seller acknowledge that they have both read and understand Section 8.11 of the Promontory CC&R's regarding the Community Enhancement Fee (1% of the gross selling price of the Property), which shall be paid for by Seller to the Conservancy at closing. Seven (7) days prior to the Settlement Deadline, Seller acknowledges that it shall have the obligation of contacting the Conservancy's Secretary regarding the pending transfer. The Conservancy's Account Manager is  Stephen Lees who can be reached at (435) 333-4026.

## 5. Construction of a Residence on the Property (if applicable)

*Page 3 of 5*

In the event a residence is in the process of being constructed on the Property and has not received a Final Certificate of Occupancy from Summit County and/or Final Release from the Architectural Review Committee, Buyer and Seller agree as follows:

**5.1** Buyer and Seller acknowledge that Summit Sotheby's International Realty typically does not represent transactions for properties that have not yet received Certificate of Occupancy or Final Release from the Promontory Architectural Review Committee. Both Buyer and Seller acknowledge that they have been warned of the possible risks associated with entering into a purchase contract for this Property prior to it receiving Certificate of Occupancy and/or Final Release from the Promontory Architectural Review Committee.

**5.2** The residence will be constructed pursuant to the construction plans entitled _____ and dated _____ _____ and the specifications entitled _____ and dated _____ (collectively referred to herein as the "Plans and Specifications"). Seller agrees to provide Buyer with copies of the Plans & Specifications for the Property.

**5.3** Any changes to the Plans and Specifications after the acceptance date of this REPC which result in a change to the Purchase Price or the Settlement Deadline shall require an Addendum to this REPC signed by both Buyer and Seller. It shall be the responsibility of Buyer and Seller to inform Company of such change(s), in writing, within 24 hours of the change. Note: Any such changes may also be subject to approval by the Conservancy's Architectural Review Committee and Summit County.

**5.4** A Builder's Warranty ☐ WILL ☐ WILL NOT be provided to the Buyer(s) by Seller. It will be the sole responsibility of Seller to arrange for and communicate to Buyer the details concerning any warranty for the Property. Both Buyer and Seller acknowledge and agree that Company does not warrant or represent any construction of the Property.

**5.5** Seller will assign to Buyer at Settlement any and all Equipment and Appliance warrantees. Seller shall supply any Manuals and Instructional materials that Seller has in their possession to Buyer at the time of Settlement. Seller and Seller's Builder shall be responsible for scheduling and performing a walk through and home orientation with Buyer.

**5.6** Buyer agrees to not enter the residence without being accompanied by Seller or Seller's agent/representative, unless agreed to otherwise, in writing.

**5.7** Seller shall provide a copy of the Certificate of Occupancy and Final Release to Buyer with three (3) business days of Seller's receipt thereof.

## 6. Miscellaneous

**6.1** Permanent Occupancy of Incentive Lots. Buyer acknowledges that lots designated on a plat as "Incentive Density Units" are subject to the payment of a one-time $11,276.24 (amount subject to Price Level Adjustment pursuant to Promontory's Development Agreement with Summit County) fee to Summit County in the event the owner uses the lot for permanent occupancy.

**6.2** Buyer and Seller jointly and severally agree to indemnify and hold harmless Summit Sothebys International Realty, Utah 7000 Development, LLC (including its affiliates), and Blueprint Global Marketing ("Indemnitees") and all of their successors and assigns, from any claim, action, liability, loss, damage or suit, arising from or related to the obligations and representation made in this Amendment 1 to the REPC. In the event of any asserted claim, the Indemnitees shall provide the undersigned timely written

notice of same, and thereafter the undersigned Buyer and Seller shall at its own expense defend protect and save harmless Indemnitees against said claim or any loss or liability thereunder. In the further event the undersigned Buyer and Seller shall fail to so defend and/or indemnify and save harmless, then in such instance the Indemnitees shall have full rights to defend, pay or settle said claim on their behalf without notice to the undersigned and with full rights to recourse against the undersigned for all fees, costs, expenses and payments made or agreed to be paid to discharge said claim.

**6.3** Buyer and Seller acknowledge that both have read and fully understand the plat notes for the Property.

Buyer and Seller agree that any credits given to Buyer by Seller, including, but not limited to construction related credits, credits associated with membership in the Promontory Club, etc. will not reduce the commissionable amount due to Summit Sotheby's International Realty, the calculation of the Community Enhancement Fee (if applicable) as described in the Promontory CC&Rs, or, for Featured Builders ONLY, the Marketing and Referral Fee to be paid by the Seller.

**To the extent the terms of this AMENDMENT modify or conflict with any provisions of the REPC, including any addenda and counteroffers, these terms shall control. All other terms of the REPC, including any addenda and counteroffers, not modified by this AMENDMENT shall remain the same.**

| | | | | | |
|---|---|---|---|---|---|
| Buyer Signature | (Date) | (Time) | Buyer Signature | (Date) | (Time) |
| Seller Signature | (Date) | (Time) | Seller Signature | (Date) | (Time) |

**THIS FORM WAS CREATED FOR AND APPROVED BY SUMMIT SOTHEBY'S INTERNATIONAL REALTY AND IS COMPLIANT WITH UTAH LAW**

*Page 5 of 5*