David E. Leta (1937)
Douglas P. Farr (Swearing in and *Bar # Pending*)
**SNELL & WILMER**
15 West South Temple, Suite 1200
Salt Lake City, Utah 84101
Telephone: (801) 257-1900
Facsimile: (801) 257-1800
Email: dleta@swlaw.com
Email: dfarr@swlaw.com

*Attorneys for Bank of America, N.A.*

**IN THE UNITED STATES BANKRUPTCY COURT
DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| In re<br><br>HRAF HOLDINGS, LLC,<br><br>    Debtor. | Bankruptcy No. 10-32433 (RKM)<br>Chapter 11 |
| In re<br><br>HARBOR REAL ASSET FUND, LP,<br><br>    Debtor. | Bankruptcy No. 10-32436 (RKM)<br>Chapter 11<br><br>[Filed Electronically] |

**OBJECTION TO DEBTORS' DISCLOSURE STATEMENT WITH RESPECT
TO PLAN OF REORGANIZATION UNDER CHAPTER 11
OF THE BANKRUPTCY CODE**

    Bank of America ("**BofA**"), through counsel, objects to the jointly filed *Disclosure Statement With Respect to Plan of Reorganization Under Chapter 11 of the Bankruptcy Code*, [Docket No. 12] dated September 9, 2010 (the "**Disclosure Statement**") filed by the Debtors in the above-captioned jointly administered case for the reasons set forth below, and requests that

12067850.2

the Court deny approval of the Disclosure Statement, or require that the same be modified to cure the indicated deficiencies. In support of this Objection, BofA, represents as follows:

A. **Inadequate Liquidation Analysis**

1. The Debtors' *Plan of Reorganization Under Chapter 11 of the Bankruptcy Code*, dated September 10, 2010 (the "**Plan**"), which is attached as Exhibit A to the Disclosure Statement and separately filed as Docket No. 11, proposes, as part of the Plan, that the separate bankruptcy estates of HRAF Holdings, LLC ("**HRAF**") and Harbor Real Asset Fund, LP ("**Harbor**") be "deemed consolidated pursuant to Bankruptcy Code § 1123(a)(5). *See* Section 5.3 of the Plan. No such consolidation is proposed prior to confirmation, however. Harbor and HRAF are separate debtors in separate bankruptcy cases. Each Debtor has separate assets, separate liabilities and separate equity security holders. BofA claims a security interest in all of HRAF's assets to secure HRAF's guarantee of Harbor's liabilities to BofA. BofA also holds a senior, properly perfected security interest in 100% of the membership interests of HRAF. This membership interest also is the principal asset of Harbor.

2. Section 5.3(a) of the Plan provides, in part, as follows:

> All assets of HRAF shall remain subject to a first-priority Lien in favor of the Bank *as provided in Section § 4.2(b) of the Plan above, and subject to the limitations of that section*. (Emphasis added)

3. Section 4.2(b) of the Plan provides, in part, as follows:

> As the Reorganized Debtors' property is sold or liquidated, after payment of expenses of sale, *payment to any co-owners or participants in such property* and any liens or other encumbrances on such property (including taxes and HOA fees), the Reorganized Debtor shall pay the Bank *90% of the net proceeds of sales or liquidations*. The remaining 10% of the net proceeds (the "Remaining Net Proceeds") shall *revest in the Reorganized Debtor, free and clear of any Claim or Lien*, but subject to the terms of the Plan. (Emphasis added)

The claims of BofA are separately classified in the Plan as "Class 2". *See* Article III and Section 4.2 of the Plan. BofA's Class 2 claim is also classified as "impaired" under the Plan. *See* Section 4.2(a) of the Plan.

4.  Section 1129(a)(7) of the Bankruptcy Code requires, as a condition of confirmation, that "with respect to each impaired class of claims" each holder of a claim in the class has either "accepted the plan" or

> (ii) Will receive or retain under the Plan on account of such claim or interest property of a value, as of the effective date of the Plan, that is *not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7* of this title on such date. (Emphasis added)

5.  In light of the foregoing, the Disclosure Statement must provide a liquidation analysis *for each Debtor*, as if each Debtor were separately liquidated under Chapter 7, and without regard to the proposed substantive consolidation. The proposed Disclosure Statement, completely fails in this regard. Any such liquidation analysis must include an analysis of avoidance actions under Section 544, including the avoidance by HRAF of any participation interest or asserted participation interest against HRAF's assets. BofA contends that if a proper liquidation analysis for each entity were included with the Disclosure Statement, it would show a treatment of BofA's secured claim that is significantly different than the treatment being proposed by the Debtor in Section 4.2(b) of the Plan. Accordingly, such a liquidation analysis is a material aspect of the Disclosure Statement and must be provided.

6.  In addition, the liquidation analysis should properly describe the liens and encumbrances that are applicable with respect to *each property*, rather than in the aggregate. Tax liens, HOA assessments, mechanic's liens and other encumbrances are not universally held by all classes of secured creditors against all assets. Each property is unique and the claims held by creditors against each property also are unique. The Disclosure Statement fails to properly reveal these relationships.

12067850.2                                3

**B.   The Disclosure Statement Lacks a Reorganization Budget**

7.   The Disclosure Statement completely lacks a reorganization budget showing what expenses, if any, *each Debtor* expects to incur post-confirmation, on a monthly basis, without consolidation and with consolidation.  The information should be provided for at least three (3) years, since this is the proposed payout period under the Plan.  The only projection attached to the Disclosure Statement is Exhibit B, which simply is a list of properties with a projection of sales proceeds.  Such a schedule is inadequate because it does not contain any projection regarding (a) the order in which properties will be sold, (b) the Debtor's respective operating and carrying costs during the sales process, including insurance, maintenance, administrative expenses and the like, (c) provisions for payment of prior liens, closing costs and commissions, including accruing interest on the same, and (d) allocation of proceeds, including accruing interest and reduction of debt.  Without such a projection, prepared for *each Debtor* the Disclosure Statement is inadequate.

**C.   Inadequate Disclosure Respecting Participation Agreements**

8.   Section 3.1.6 of the Disclosure Statement discusses "loan participation parties".  The information in this section is misleading.  As drafted, it suggests that *both Debtors* are subject to the participation agreements, when, in fact, only Harbor is a party to those documents.  When Harbor transferred the assets to HRAF, 100% of each asset was transferred, not subject to any participation interest.  The Disclosure Statement must be modified to correctly reflect this relationship and, in addition, it should be modified further to explain HRAF's rights under Section 544 of the Bankruptcy Code.  Participants cannot share in any portion of the proceeds of asset sales until all of HRAF's creditors are paid in full and any remaining proceeds trickle down to Harbor.

**D.   The Disclosure Statement is Misleading Because of the Way in Which it Discusses HRAF and Harbor as if Both Entities Were the Same**

9.   At various places throughout the Disclosure Statement, references are made to Harbor, HRAF and "Debtors."  The document, however, discusses these separate entities as if

they were the same. This is misleading and incorrect. For example, Section 4.1 of the Disclosure Statement identifies "the Debtors' real property interests" when, in fact, Harbor has no such interests. All of the property identified in the table is property owned solely by HRAF.[1] Similarly, in discussing the loan participation parties, the Debtors combine the terms "Harbor" and "Debtors" in an incorrect and misleading fashion. Section 3.1.6 of the Disclosure Statement provides as follows:

> Harbor originated some of its loans in cooperation with other lenders. Specifically, in four instances other lenders acquired an undivided interest in the loans. Thus, with respect to these participated loans, Harbor acts as agent in administering and enforcing the loan, but *the Debtors* are not entitled to all of the proceeds of the loan by virtue of the participation agreements. *The Debtors* do not believe that these loan participants are creditors of *the Debtors*, and *the Debtors* do not believe that they are entitled to the proceeds of the loans, in excess of the agreed participation percentages. By way of example, if Harbor entered into a participation agreement with another lender, with Harbor and the other lender each advancing half of the loan proceeds, and the borrower repaid $100, then Harbor would be entitled to $50 of the loan repayment, and the other lender would be entitled to the other $50.
>
> Several of these loan participations involve Harbor Offshore Real Asset Fund, Ltd. ("Harbor Offshore"). Harbor Offshore is organized as a Cayman Islands exempted company for the purpose of enabling foreign (i.e. non-US citizens) investors to participate in loans originated by Harbor. Harbor Offshore shares common management *with the Debtors*. (Emphasis added)

10. In fact, only Harbor entered into the participation agreements. HRAF has no liability to the participants. Moreover, the participants have no claim against HRAF's assets. In addition, Harbor Offshore does not share common management with HRAF, but it does share common management with Harbor. The entire Disclosure Statement is riddled with these ambiguities, misstatements and errors. The Disclosure Statement must be modified to correctly describe the relationships that each Debtor has with its assets and its creditors.

---

[1] If any of the property is separately owned by Harbor then it should be separately identified as such.

### E. The Discussion of the Forbearance Agreement is Incomplete

11.   In Section 2 of the Disclosure Statement, there is a discussion of the Forbearance Agreement dated July 23, 2009 between Harbor and BofA. The discussion is incomplete because it fails to disclose the multiple defaults by Harbor under the Forbearance Agreement, including, most notably, Harbor's failure to liquidate properties and make payments to BofA within the time frames, and in the amounts, that were set forth in the Forbearance Agreement. Harbor's inability to liquidate property in a timely manner is a material fact underlying the proposed Plan which, in essence, is a liquidation plan.

### F. Inadequate Disclosure Respecting the Payment of Unsecured Claims

12.   The Disclosure Statement proposes to pay the holders of small unsecured claims (less than $3,000) 80% of the face amount of the claims. It does not disclose, however, the source of these payments or whether the Debtor is proposing to subordinate the claims of BofA in order to facilitate the payment of unsecured claims. Such a discussion is required, as is a discussion of the absolute priority rule in this regard. The document also must indicate that these creditors hold claims against Harbor, and not against HRAF, and, therefore, would not be entitled to any payments until all of HRAF's creditors are paid in full.

### G. The Disclosure Statement Contains Inaccurate Statements

13.   In Section 2, page 4 of the Disclosure Statement, the Debtors make the following statement;

> Contemporaneously with the filing of the Debtors' bankruptcy petition, the Debtors have filed motions to approve the sale of real estate which will result in the net proceeds to the Bank of nearly $3.5 million.

A simple review of the docket will reveal that this statement is inaccurate.

### H. The Discussion Respecting "Claims Against the Bank" is Misleading and Incomplete

14.   In Section 6.3 of the Disclosure Statement, the Debtors set forth the basis for alleged "causes of action against the Bank, based on the Bank's breach of the covenant of good

12067850.2                                     6

faith and fair dealing, and its attempted commercially unreasonable disposition of collateral." There is no legal or factual substance to the statements in the Disclosure Statement. As a matter of law, enforcement of rights under a contract, in accordance with the terms of the contract, is not a breach of the implied covenant of good faith and fair dealing. Furthermore, there is no explanation of why an "attempted" disposition of collateral, which is stayed by a bankruptcy petition, gives rise to any cause of action, whether or not the "attempted" disposition is commercially unreasonable. Furthermore, there is no description of why the "attempted" disposition was commercially unreasonable. The Disclosure Statement fails to cite any case authority in support of the proposition that the Debtors have claims against the Bank. Furthermore, the Disclosure Statement fails to reveal the multiple breaches by Harbor of the terms and conditions in the Credit and the Forbearance agreements. It also fails to disclose the terms of the Forbearance Agreement and, in particular, the waiver and release provisions contained therein, as well as the exculpatory language of the document. The entire discussion about claims against the Bank is lacking in substance, is intended only to inflame and mislead other creditors, and should be deleted in its entirety.

I.   **The Disclosure Statement is Ambiguous With Respect to Pre- and Post-Confirmation Interests**

15.   Section 4.2(b) of the Plan says, in part, that "the full amount of the Bank's claim, including interest and attorneys-fees to the extent allowable under Bankruptcy Code § 506(b), shall be paid in full through the proceeds of the sale and liquidation of the Reorganized Debtor's property not later than the end of the Initial Sales Period." The term "Bank's Claim" is not defined in the Plan, although the terms "Bank" and "Claim" are separately defined. The Plan also contains a definition of "Plan Rate," which is the interest rate determined pursuant to 28 U.S.C. § 1961 as of the Petition Date. But, the term "Plan Rate" is not used in the Plan. The current default rate under the Bank's loan is 9% per annum. It is not clear from the Disclosure Statement or from the Plan which rate of interest the Debtor proposes to pay to the Bank on the "Bank's Claim," nor is it clear what rate of interest the Debtor is proposing to pay to other

creditors on their respective claims. This information is material because it impacts confirmation of the Plan under Section 1129(a)(7) and might impact feasibility.

**J.      The Disclosure Statement fails to discuss or provide for the consequence of default.**

16.     The Disclosure Statement and Plan assume success, but to provide adequate disclosure they also must provide for the possibility of default and failure. There are no such provisions in either document. As a result, the disclosure is inadequate.

## CONCLUSION

For the reasons set forth above, the Court should deny approval of the Disclosure Statement, or, in the alternative, require that it be modified to address the above concerns.

DATED this 12th day of October 2010.

**SNELL & WILMER**

  /s/ *David E. Leta*
David E. Leta
*Attorneys for Bank of America*

## CERTIFICATE OF SERVICE

I hereby certify that on October 12, 2010, I caused a true and correct copy of the foregoing to be served upon the following via electronic mail:

Matthew M. Boley
Parsons Kinghorn Harris
mmb@pkhlawyer.scom

Laurie A. Cayton, Trustee
laurie.cayton@usdoj.gov

George B. Hofmann
Parsons Kinghorn Harris
gbh@pkhlawyers.com

Vernon L. Hopkinson
Cohne Rappaport & Segal
vern@crslaw.com

Michael R. Johnson
Ray, Quinney & Nebeker, P.C.
mjohnson@rqn.com

Steven C. Strong
Parsons Kinghorn Harris
scs@pkhlawyer.scom

United States Trustee
USTPRegion19.SK.ECF@usdoj.gov

Kent O. Willis
ucadm.kentw@state.ut.us


   /s/ *David E. Leta*
David E. Leta